[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff instituted this proceeding by filing a nine-count complaint seeking damages for injuries allegedly sustained from exposure to asbestos while he was a teacher at the Rogers Park Middle School (middle school) in Danbury. He alleges that the City of Danbury contracted with R.W. Granger Sons, Inc. (Granger) to renovate various school buildings including the middle school prior to the start of the 1992 school year. Granger, in turn, contracted with defendant Rojac Company, Inc. (Rojac) to perform various renovation tasks, including the removal of laboratory counter tops. The complaint continues by asserting that in September of 1992, Rojac removed and cut laboratory countertops in various classrooms of the middle school including the plaintiff's classroom and, in the process, generated considerable and copious quantities of airborne dust (containing asbestos fibers). At the time of these renovations, the school was open to the public, as well as the faculty and staff. The plaintiff entered and remained in the school and in one of its classrooms for substantial periods of time.
Counts three through seven of the complaint are at issue on the present motion for summary judgment.[1] The third count is directed at Eugene Eriquez, the mayor of the City of Danbury. The plaintiff alleges that defendant Eriquez contracted with Granger to perform the renovations at the middle school, and was CT Page 9544 negligent in that he failed to: a) require that all risks of asbestos exposure be identified; b) require that the renovation work be performed in a manner adequate to protect the plaintiff from exposure to asbestos; and c) warn the plaintiff of his potential exposure to asbestos.
The fourth count is directed at the City of Danbury. The plaintiff reasserts the allegations in count three and then alleges that at all relevant times defendant Eriquez was acting in the performance of his duties and within the scope of his employment as Mayor of the City of Danbury. In count five, he reasserts the allegations in count three and alleges that the City had a duty to keep and maintain its schools in a reasonably safe condition.
The sixth count is directed at defendant William Spielberg, the principal of the middle school. The plaintiff claims that Spielberg represented to him that the dust generated by the work performed at the middle school posed no threat of harm or injury and that it was perfectly safe for plaintiff to continue his activities at Rogers Park Middle School. Relying on these representations, which the plaintiff recites that Spielberg knew or should have known were false, he claims that he continued his activities at the middle school and as a result was exposed to asbestos. The seventh count is directed at Anthony Singe, the Danbury Superintendent of Schools. The plaintiff asserts that Singe was negligent in failing to: a) protect the plaintiff from exposure to asbestos; b) warn the plaintiff of the hazards posed by the presence of asbestos; and c) determine that such hazards existed.
As a result of the alleged negligence of the defendants, the plaintiff claims that he was exposed to dust containing asbestos putting him at risk of contracting asbestosis and thereby endangering his health and well being. As a further result of the defendants' alleged negligence, the plaintiff recites that he has suffered and will continue to suffer mental and emotional anguish from his fear of contracting asbestosis or some other similar carcinogenic disease. He now seeks damages along with costs attorneys fees, punitive damages and such other and further relief as the court may deem just and equitable.
The defendants have filed an answer with special defenses. The first special defense alleges that the exclusivity provisions of the Workers' Compensation Act bar the plaintiff's claims. In CT Page 9545 the second, they claim that Eriquez, Singe and Spielberg are entitled to qualified immunity because they were governmental employees employed in discretionary functions at all relevant times. The defendants have moved for summary judgment as to counts three through seven of the complaint and the plaintiff's prayer for relief on the strength of those special defenses.
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Citations omitted; internal quotation marks omitted.)Home Ins. Co. v. Aetna Life Casualty Co., 235 Conn. 185, 202.
The defendants argue that Secs. 31-284 (a) and 31-293a of the General Statutes, respectively, the exclusive remedy provisions of the Workers' Compensation Act (WCA), bar the plaintiff's negligence claims. Section 31-284 (a) provides: "An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment . . . but an employer shall secure compensation for his employees as provided under this chapter. . . ." Section 31-293a provides in pertinent part: "If an employee . . . has a right to benefits or compensation under this chapter on account of injury or death from injury caused by the negligence or wrong of a fellow employee, such right shall be the exclusive remedy of such injured employee or dependent and no action may be brought against such fellow employee. . . ."
The plaintiff concedes that he, along with the other named defendants, was employed by the City of Danbury, and that if the provisions of the Workers Compensation Act, specifically, Secs.31-284 (a) and 31-293a of the General Statutes were to beapplicable, the remedies provided therein would be the exclusive remedy afforded a plaintiff for injuries arising out of the course of employment. (Emphasis supplied.) He argues, however, that the exclusive remedy provisions of the WCA do not apply because his claim for emotional distress, which did not arise out CT Page 9546 of a physical injury or occupational disease, is not a "personal injury" as defined by Sec. 31-275 (16). Even if the alleged injuries are within the scope of the WCA, the plaintiff claims that the exclusivity provisions of the WCA do not apply because his claims did not arise out of and in the course of his employment.
He seeks to recover for the present harm of the fear of developing asbestosis. According to his hypothesis, our Supreme Court has recognized that such a fear is compensable under the category of emotional distress. He cites to Petriello v. Kalman,215 Conn. 377, 389-92, for support, ("evidence concerning an increased risk of injury . . . may . . . be presented to the jury as evidence of emotional distress.").
The WCA defines "personal injury" to include "in addition to accidental injury which may be definitely located as to time when and place where the accident occurred, an injury to an employee which is causally connected with his employment and is the direct result of repetitive trauma or repetitive acts incident to such employment, and occupational disease." Section 31-275 (16)(A). InCrochiere v. Board of Education, 227 Conn. 333, 363, the court interpreted this section to include "mental disorders, even if not accompanied by physical trauma to the body," as compensable injuries under the WCA. Effective July 1, 1993, Public Act 93-228
amended this section to exclude from the definition of personal injury "[a] mental or emotional impairment, unless such impairment arises from a physical injury or occupational disease." Section 31-275 (16)(B)(ii). "The amendment clearly provides that no mental impairment is compensable under the WCAunless it arises from physical injury." (Emphasis in original.)Meyers v. Arcudi, 915 F. Sup. 522, 524 (D. Conn. 1996), citing Sec. 31-275 (16)(B)(ii) of the General Statutes. Accordingly, recent cases have held that the exclusivity provision of the WCA does not bar a common-law claim for emotional distress where the distress did not arise from a physical injury or occupational disease. See Carr v. Devereux Foundation, Inc., Superior Court, judicial district of Litchfield at Litchfield, Docket No. 067464 (September 6, 1995, Pickett, J.); Stepney v. Devereux Foundation,
Superior Court, judicial district of Litchfield at Litchfield, Docket No. 065885 (July 17, 1995, Pickett, J.,14 Conn. L. Rptr. 483, 485).
Nevertheless, the applicable statutes in workers' compensation cases are those in effect at the time of the CT Page 9547 plaintiff's date of injury. Kluttz v. Howard, 228 Conn. 401, 404
n. 3, ("We adhere to the date of injury rule as the applicable date for determining the rights and obligations as between parties in workers' compensation cases."). For the period prior to the July 1, 1993 amendment, "mental disorders, even if not accompanied by physical trauma to the body, constitute an injury under the act." Crochiere v. Board of Education, supra. See alsoBennett v. Beiersdorf, Inc., 889 F. Sup. 46, 50 (D. Conn. 1995) ("emotional distress was compensable under the WCA as a `personal injury' as long as it arose out of and in the course of employment"). Therefore, to the extent that the plaintiff's claim for emotional distress "is based on injury occurring before July 1, 1993, it [appears to be] barred by the exclusivity provision of the WCA." Bennett v. Beiersdorf, Inc., supra, 51. In addition, and to reiterate, the common law claim for emotional distress is indeed barred by the WCA, even if not accompanied by physical trauma, to the extent that it is claimed that it arose out of and in the course of the plaintiff's employment. See Crochiere v.Board of Education, supra.
"[T]o recover for an injury under the act, a plaintiff must prove that the injury is causally connected to the employment. To prove causal connection, a plaintiff must demonstrate that the injury claimed (1) `arose out of the employment,' and (2) `in the course of the employment.'" (Citation omitted; internal quotation marks omitted.) Crochiere v. Board of Education, supra, 349. Section 31-275 (1) provides in pertinent part: "`Arising out of and in the course of his employment' means an accidental injury happening to an employee or an occupational disease of an employee originating while he has been engaged in the line of his duty in the business or affairs of the employer upon the employer's premises. . . ." To determine whether an injury "arose out of the employment" the "time, place, and circumstances of the injury" must be considered. Three requirements must be satisfied for an injury to be "in the course of the employment." The injury must occur: "(a) within the period of the employment; (b) at a place the employee may reasonably be; and (c) while the employee is reasonably fulfilling the duties of the employment or doing something incidental to it." (Citations omitted; internal quotation marks omitted.) Crochiere v. Board of Education, supra, 349. "Determining whether an injury arose out of and in the course of employment is a question of fact. . . ." Crochiere v.Board of Education, supra, 346.
The plaintiff claims that his injuries and exposure to CT Page 9548 asbestos occurred prior to the start of the school year, at a time when he was not required to be on the school premises, and while he was engaged in activities purely for his own benefit. Nevertheless, at the time of the alleged injury, the plaintiff was at the place of his employment with the permission or acquiescence of his employer and was preparing himself to fulfill his duties as a school teacher. "[U]nless the case lies clearly on the one side or the other the question whether an employee has so departed from his employment that his injury did not arise out of it is one of fact." (Citations omitted; internal quotation marks omitted.) Crochiere v. Board of Education, supra, 348. Under the circumstances of the present case, the issue of whether the plaintiff's injuries arose out of and in the course of his employment, and thus whether his common-law claim is barred by the WCA, presents a question of material fact. The defendants' motion for summary judgment, to the extent that it is based on the exclusive remedy provisions of the WCA is, accordingly, denied.
The defendants also seek summary judgment based on the doctrine of governmental immunity. They argue that they are entitled to governmental immunity for the discretionary acts in contracting for the renovations of the middle school. Therefore, they assert that summary judgment should be rendered in their favor as to counts three through seven.
The plaintiff acknowledges that all the acts of the various defendants upon which the allegations of negligence are based were discretionary in nature and, therefore, that in order to succeed on his claim of liability, he must be entitled to recover within one of the recognized exceptions to a municipal employee's qualified immunity for discretionary acts. Burns v. Board ofEducation, supra, 228 Conn. 640, 645. He argues, however, that he was a member of a foreseeable class of victims to whom the defendants owed a special duty of care and, thus, that the defense of governmental immunity does not apply.
"A municipality's potential liability for its tortious acts is limited by the common law principle of governmental immunity."Heigl v. Board of Education, 218 Conn. 1, 4. "The doctrine of governmental immunity has [also] provided some exceptions to the general rule of tort liability for municipal employees. [A] municipal employee . . . has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary CT Page 9549 act. . . . The word `ministerial' refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." (Citations omitted; internal quotation marks omitted.) Burns v. Board of Education, supra.
The plaintiff in the present case argues that the "foreseeable victim/imminent harm" exception to the doctrine of governmental immunity applies. Where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm, the doctrine of governmental immunity does not serve as a defense. Our Supreme Court has "construed this exception to apply not only to identifiable individuals but also to narrowly defined identified classes of foreseeable victims." Burns v. Board ofEducation, supra, 646.
In Evon v. Andrews, 211 Conn. 501, 507-08, the plaintiffs alleged that the defendants, a municipality and various city officials, had not done enough to prevent the occurrence of a fire, which destroyed the decedents' residence. The court stated that "[t]he risk of fire implicates a wide range of factors that can occur, if at all, at some unspecified time in the future. The class of possible victims of an unspecified fire that may occur at some unspecified time in the future is by no means a group of `identifiable persons' within the meaning of Shore v. Stonington,
supra." Evon v. Andrews, supra. Furthermore, the court concluded that the plaintiffs' decedents were not subject to "imminent harm." Because the fire could have occurred at any time or not at all, the court did not accept the proposition that the plaintiffs' decedents in this case were readily identifiable victims subject to imminent harm.
In Burns v. Board of Education, supra, 650, the plaintiff school child slipped and fell due to icy conditions on a main accessway of the school campus, during school hours, while the child was compelled by statute to be on those school grounds. The court in Burns distinguished the circumstances in that case from the incident in Evon v. Andrews, supra, in that "this accident could not have occurred at any time in the future; rather, the danger was limited to the duration of the temporary icy condition in this particularly `treacherous' area of the campus. Further, the potential for harm from a fall on ice was significant and foreseeable." Burns v. Board of Education, supra. The court noted that statutory and constitutional mandates demonstrate that school children attending public schools during school hours are CT Page 9550 intended to be the beneficiaries of certain duties of care, and concluded that the plaintiff school child was one of a class of foreseeable victims to whom the superintendent owed a duty of protection in relation to the maintenance and safety of the school grounds, and, accordingly, governmental immunity is no defense.
The plaintiff alleges in count six that he alerted defendant Spielberg, the principal of the middle school, to the presence of dust in the plaintiff's classroom and that he was assured by Spielberg that the dust posed no threat of harm or injury, and that it was "perfectly safe" for him to continue his activities at Rogers Park Middle School. In addition, he attests in his affidavit that Spielberg was personally aware of his presence at the school on September 11, 1992, and told him that it was safe to enter his classroom. The defendants have submitted no evidence to refute these allegations. The plaintiff has sufficiently alleged the existence of circumstances which should have made it apparent to Spielberg that his failure to act would likely subject an identifiable person to imminent harm. Burns v. BoardEducation, supra, 645.
The plaintiff was subject to imminent harm. Once the asbestos dust generated by the renovation work settled in the plaintiff's classroom and the plaintiff alerted Spielberg of its presence, the risk of exposure to asbestos was analogous to the risk of falling due to the icy conditions in Burns. Unlike the incident in Evon v. Andrews, supra, where the fire could have occurred at any future time or not at all, the potential for harm from exposure to asbestos was significant and foreseeable. Burns v.Board of Education, supra, 650. Under these circumstances, the plaintiff was a foreseeable victim subject to imminent harm, and accordingly that the doctrine of governmental immunity does not bar his claim in count six.
"The `discrete person/imminent harm' exception to the general rule of governmental immunity for employees engaged in discretionary activities has received very limited recognition in this state." Evon. v. Andrews, supra. In reaching its conclusion, the court in Burns emphasized the fact that the responsibility of school boards and superintendents to maintain and care for property used for school purposes and the responsibility of children to attend school is mandated by statute. Burns v. Boardof Education, supra, 648-49. As a result of this network of statutory and constitutional provisions, the court concluded that CT Page 9551 the superintendent of schools bears the responsibility for failing to act to prevent the risk of imminent harm to school children as an identifiable class of beneficiaries of his statutory duty of care. The court noted that this conclusion comports with our case law that has traditionally recognized that children require special consideration when dangerous conditions are involved.
In addressing the plaintiff's claims against Eriquez, Singe and the City of Danbury in counts three, four, five and seven, however, the plaintiff was not a foreseeable victim. The "network of statutory and constitutional provisions" relied on by the court in Burns and the special consideration given to children are simply not present in this case. The gravamen of the plaintiff's claim in the subject counts is that the City and its agents were negligent in contracting for the renovation of the school building and in failing to protect the plaintiff from exposure to asbestos. With respect to these allegations, the risk of exposure to asbestos is analogous to the risk of fire in Evon. Under the circumstances in this case, where the school was undergoing general renovations and the building was open to the public, the risk of exposure to asbestos implicates a wide range of factors that can occur, if at all, at some unspecified time in the future. Evon v. Andrews, supra.
Based on Evon v. Andrews, the court finds that the class of possible victims of exposure to asbestos that may occur at some unspecified time in the future is by no means a group of "identifiable persons" within the meaning of Shore v. Stonington,
supra. The adoption of a rule of liability where some kind of harm may happen to someone would cramp the exercise of official discretion beyond the limits desirable in our society. Accordingly, the plaintiff was not a readily identifiable victim with respect to the allegations in counts three, four, five and seven and, therefore, that the plaintiff's negligence claims against the defendants in those counts are barred by the doctrine of governmental immunity. The defendants' motion for summary judgment based on the doctrine of governmental immunity is, accordingly, granted as to counts three, four, five and seven, and denied as to count six.
Finally, the defendants argue that there is no basis in Connecticut law for the plaintiff's claims for punitive damages and attorney's fees in the prayer for relief. The plaintiff argues that if the defendants seek to challenge the legal CT Page 9552 sufficiency of the plaintiff's prayer for relief, the appropriate mechanism to do so is a motion to strike. Accordingly, the plaintiff concludes that the defendants' motion for summary judgment is inappropriate.
Because a prayer for relief does not constitute a cause of action upon which judgment may enter, "[t]he only pretrial method to attack a prayer for relief is a motion to strike." Hoeyv. Textron, Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 270203 (March 17, 1994, Rodriguez, J.,9 CSCR 423); Watrous v. DiLauro, Superior Court, judicial district of New Haven at New Haven, Docket No. 257087 (April 16, 1990, Schimelman, J., 1 Conn. L. Rptr. 504, 505). Practice Book § 152 provides, inter alia: "Whenever any party wishes to contest . . . (2) the legal sufficiency of any prayer for relief in any such complaint, counterclaim or cross-complaint, . . . that party may do so by filing a motion to strike the contested pleading or part thereof." Therefore, a motion for summary judgment is not the appropriate method of attack. The defendants' motion for summary judgment as to the plaintiff's prayer for relief is denied.
An order may enter in accordance with the foregoing.
Moraghan, J.